IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT COOPER, #209556, | : |
|    Plaintiff | : |
| v. | :   CIVIL ACTION NO. AMD-06-2216 |
| HENRY J. GAITHER, et al., | : |
|    Defendants | : |

MEMORANDUM

Before the court is a pro se 42 U.S.C. § 1983 prisoner civil rights complaint for damages and injunctive relief filed by Robert Cooper, an inmate at the North Branch Correctional Institution.[1] Defendants Tyrone Crowder, former Chief of Security, Sgt. Henry J. Gaither, Officer Brian Thomas, Major Marvin Reid, Lt. Rynell Cottman, Lt. Carter, Lt. James Davis, Lt. Donald Lane, Lt. Peters, Lt. Wanda Pittman, Captain Kim V. Wilson and Captain E. McFarlane ("state defendants") have moved to dismiss, or alternatively, for summary judgment.[2] Counsel for Correctional Medical Services, Inc., and Zerabruck Tewelde, M.D., ("medical defendants") have filed a similar motion. Cooper has filed a response in opposition to both motions.

Defendants rely on materials beyond the scope of the complaint; their motions shall be construed as motions for summary judgment pursuant to Fed. R. Civ. P. 56. No hearing is necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, the court will grant summary judgment in favor of the state and medical defendants by separate order.

---

[1] At the time Cooper filed this complaint he was incarcerated at the Maryland Correctional Adjustment Center.

[2] Lehrman Dotson retired on January 1, 2007.

I. Claims Presented

Cooper asserts the following claims against the state defendants: (1) correctional officers have verbally harassed him[3] and taunted him about urine-tainted food; (2) between June 25, 2006, and August 16, 2006, he complained to then-Warden Lehrman, the Assistant Warden, the Acting Security Chief, Major Reid, and all of the lieutenants assigned to the 3-11 shift that he was afraid of Sgt. Gaither and Officer Thomas, yet they allowed those officers to assault him on July 21, 2006; (3) Sgt. Gaither and Officer Thomas attacked him on July 21, 2006, to prevent him from turning his food tray over to a supervisor for testing; (4) during the alleged struggle for the food tray, Cooper injured his wrist, Sgt Gaither refused to inform a supervisor or the medical department, and Cooper was not escorted to the medical department until the 11-7 shift; (5) he was placed on the "drop meal" program following the food tray incident, which is to be used only for those prisoners in the "quality of life" program;[4] (6) he has been denied ice and fluids; and (7) he was not asked whether he wanted to file criminal charges after the alleged July 21, 2006 assault, and received no response from the Warden to the ARP he filed after the incident. Cooper generally complains no precautions are taken to protect him or his food. Cooper states that he is afraid of Sgt Gaither and Officer Thomas and does not want them working around him, his food, or his mail.[5]

---

[3]Cooper alleges he was called "bitch" and "faggot" and sexual threats were made. Complaint, p. 3, 5. Plaintiff's Opposition, pp. 2 & 9.

[4]A "drop meal tray" is a styrofoam three-sectioned tray which is tightly wrapped with clear plastic to prevent spillage and placed in the cell through the food slot onto the floor after the inmate moves to the rear of the cell. State Deft. Ex. 8. The manner by which Cooper's meals were provided to him as alleged here does not state a constitutional cause of action.

[5]In his request for injunctive relief, Cooper requests a transfer or, in the alternative, the reassignment of Sgt. Gaither and Officer Thomas. The request is now moot in light of Cooper's transfer to the North Brook Correctional Institution. The Court is unaware of the reason for Cooper's transfer, but notes that the recent closing of the Maryland House of Correction resulted in the relocation of a large number of state inmates.

Cooper asserts the treatment provided by the medical defendants for his wrist injury was inadequate. He complains there was no follow-up medical care with a physician, no physical therapy, no orthopedic consultation, and no ace bandage, sling or brace provided.

II. Background

A. State Defendants

Verified submissions of the state defendants show that Cooper was transferred to the Maryland Correctional Adjustment Center (MCAC) as an emergency transfer from the former Maryland House of Correction Annex, now the Jessup Correctional Institution, on November 7, 2005. From the date of his transfer to October 25, 2006, Cooper received 17 infractions, eight of which resulted in disciplinary segregation.[6] Of these, six were issued in July 2006. In his response, Cooper counters that Sgt. Gaither and others "plotted" to write infractions against him. Other than Cooper's own unsupported assertions, however, there is nothing in the record to suggest that prison officials conspired to write infractions against Cooper.

Cooper filed three Requests for Administrative Remedies (ARPs) which relate to the issues raised in the instant complaint. On July 23, 2006, he filed two ARPs alleging that Sgt. Gaither denied him a drink and ice. The ARPs were dismissed after investigation showed that Cooper was given a drink and ice on the dates in question. On August 17, 2006, Cooper filed an ARP complaining of a "shakedown" of his cell that day by Sgt. Gaither and Officer Thomas. Cooper refused to comply with "breakout" procedures because he was afraid of the officers; allegedly they had assaulted him on July 21, 2006. State Deft. Ex. 5. The Warden responded to and dismissed the ARP on September 20, 2006, stating, "The investigation revealed that you refused to comply with the breakout procedures because you stated that you did not trust Sgt. Gaither. Lt. Peters was called

---

[6] Five other infractions were reduced to incident reports, two resulted informal dispositions, one was dismissed, and one resulted in reprimand and counseling.

-3-

to the Unit and you were broken out of your cell without further incident, at no time were you assaulted by Sgt. Gaither or Cpl B. Thomas."[7]

On September 15, 2006, Major Marvin Reid referred Cooper to the Psychology Department for threatening to harm others. The records of that referral noted that Cooper has a history of aggressive and hostile behavior, and that he was exhibiting this behavior at MCAC. Plaintiff was seen by Psychology on September 21, 2006, and it was noted that he appeared calm and fairly stable. Plaintiff was to been seen for follow-up in twelve weeks.

B.  Medical Defendants

Verified submissions of the Medical Defendants in support of their dispositive motion show that on July 21, 2006, Cooper was seen at the Dispensary after he complained of an injury to his hand after allegedly being hit with a food tray. Medical Defts. Ex. B.[8] The nurse who examined Cooper's hands found no signs of bruises or injury, and noted that Cooper was able to move his fingers. The nurse noted that Cooper would be monitored for any signs of discomfort. Cooper was in stable condition, and was escorted back to his housing unit.

On July 28, 2006, Dr. Tewelde prescribed indomethacin, a nonsteroidal anti-inflammatory medication, for Cooper after he complained of discomfort. Cooper filed Sick Call Request/ Encounter Forms on August 6 and August 31, 2006. Neither sick call slip complained about wrist problems. In early September 2006, Dr. Tewelde transferred to another facility.

---

[7]Both Sgt Gaither and Officer Thomas filed Notice of Incident Reports stating that they did not assault Cooper during the shakedown of his cell. State Deft. Ex. 5.

[8]The notes for the July 21, 2006, examination indicate that Cooper stated, "I was assaulted by Officer B. Thomas and Sgt. Gaither. I set the tray on the slot. The officer's push and pull [sic] the tray out of my hand and that is when it hit me in my hand. All this was on the video tape. I am in pain on the thumb and next finger." Medical Deft. Ex. B.

On September 6, 2006, Fasil Wubu, M.D., evaluated Cooper for hypertension and obesity. Cooper did not complain of wrist problems. On September 15, 2006, Clementina Adediji, R.N., examined Cooper for a complaint about blood pressure checks. Again, Cooper did not complain of wrist problems. Cooper filed sick call forms on September 28, and October 3, 2006. When he was evaluated on October 10, 2006, he voiced no complaints about his wrist.

III. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. A fact is material for purposes of summary judgment if when applied to the substantive law, it affects the outcome of the litigation. *See Anderson*, 477 U.S. at 248. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 248-49. This burden "is particularly strong when the nonmoving party [also] bears the burden of proof." *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Fed. R. Civ.P. 56(e); *see Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy,* 929 F.2d at 1012. Furthermore, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts."*Matusushita*, 475 U.S. at 576. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587.

IV  Analysis

    A.  Claims against State Defendants

Cooper's first claim is that he was verbally harassed by correctional officers. State defendants argue that Cooper has failed to provide any proof in support of his allegations. Further, defendants note that verbal abuse of inmates by guards, without more, fails to state a constitutionally cognizable claim under 42 U.S.C. § 1983. *See Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996) (disrespectful and assaultive comments do not violate the Eighth Amendment). Even if the officer's actions occurred as Cooper describes them, the actions do not rise to the level of a constitutional violation.[9] *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. *See Paul v. Davis*, 424 U.S. 693 (1976).

Cooper also claims that he is afraid of Sgt. Gaither and Officer Thomas, and that he was assaulted by Sgt Gaither and another officer on July 21, 2006. In the context of the Eighth Amendment's prohibition against cruel and unusual punishment, the court must determine whether the force used by prison officials was applied in a good-faith effort to maintain or restore discipline,

---

[9]Though not constitutionally impermissible, the court considers such behavior, if true, highly unprofessional.

or maliciously and sadistically to cause harm." *See Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). A prisoner cannot sustain an Eighth Amendment excessive force claim if his injury is *de minimus*. *See Norman v. Taylor*, 25 F.3d 1259, 1262 (4th Cir. 1994) (en banc). Where a prisoner's injury is such that a "reasonable juror could [not] conclude that he suffered anything more than *de minimus* injury, if any injury at all, or that any force was 'repugnant to the conscience of mankind,'" the injury does not constitute cruel and unusual punishment. *Id; see also Williams v. Benjamin*, 77 F3d (4th Cir. 1996); *Riley v. Dorton*, 115 F/3d 1159, 1167 (4th Cir. 1997).

There is no July 21, 2006, incident report for the "attack" described by Cooper. State Resp. at 7. The "assault" described by Cooper involved events following his refusal to place his food tray on the slot for collection by prison guards. Even when these allegations are evaluated in the light most favorable to Cooper, they suggest at most that a minor struggle over removal of the food tray may have occurred after plaintiff resisted by pulling back on the tray through the door slot, bumping his wrist. There is no suggestion of the use of excessive force, bad faith, or malicious intent by corrections officers. *See Hudson*, 503 U. S. at 6-7.

The record shows that on July 22, 2006, Cooper "held his tray on his food slot" preventing it from shutting. State Deft. Ex 2. Eventually, Cooper removed the tray without further incident after senior officers were called. As a result of the incident, Cooper received an infraction notice for which he received sixty days of disciplinary segregation for delaying "feed up and rounds." *See id.* Cooper was examined in the medical department on July 21, 2006, for an injury to his hand after he allegedly was hit with a food tray, but no signs of injury were noted by the nurse. Cooper's

assertions that an "assault" occurred during which he sustained a wrist injury, even when evaluated in the light most favorable to him, fails to amount to a claim of constitutional magnitude.

Cooper's claims that he was placed on the drop meal program without reason, denied liquids and ice, and received no response from the Warden to the ARP he filed regarding the alleged assault on July 21, 2006, are directly refuted by the state defendants' sworn submissions. Cooper does not indicate why he believes this method of meal distribution abridged his constitutional rights. Further, given Cooper's history of multiple infractions shortly after his transfer to MCAC, "drop meal" program placement appears warranted. As earlier noted, Cooper's allegations that he was denied a drink and ice were investigated and dismissed.

Lastly, the only ARP that referenced the alleged assault was filed on August 17, 2006, and appears to reference a cell shakedown that occurred that day. State Deft. Ex. 5. To the extent Cooper claims his constitutional rights were violated by the state defendants' alleged failure to respond to his ARPs, there is no constitutional right to the establishment of an administrative remedy or other grievance process or to participate in one voluntarily established by the state. *See Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994).

In view of the record before the court, Cooper's conclusory allegations and denials fail to show that genuine issues remain for trial. Consequently, the court will grant the state defendants' motion for summary judgment.

B. Claims against Medical Defendants

A constitutional claim under the Eighth Amendment for denial of medical care must demonstrate that the defendants' acts or omissions amounted to deliberate indifference to plaintiff's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation

omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). The court notes that principles of vicarious liability or *respondeat superior* do not apply to 42 U.S.C §1983 actions. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 691-94 (1978).

Defendant Correctional Medical Services (CMS) is a private corporation that contracts with the State of Maryland to provide medical services to inmates and certain facilities.  It administers medical care only through its employees and agents.  As such, liability attributed to CMS is vicarious in nature and cannot be raised in a §1983 action.  As a matter of law, CMS is entitled to summary judgment.

Additionally, the record demonstrates that Cooper's medical treatment satisfies Eighth Amendment standards. As earlier noted, Cooper was examined at the dispensary on July 21, 2006, after he complained of an injury to his hand after allegedly being hit with a food tray.  The examining nurse found no bruises or injury, noted movement in Cooper's fingers, and continued to monitor him for discomfort. One week later, Dr. Tewelde prescribed a nonsteroidal anti-inflammatory medication for claims of discomfort. Subsequent sick slips did not contain any complaints of wrist problems.     Thus, the record shows that Cooper was regularly monitored, evaluated and treated for his medical concerns, directly contradicting Cooper's claims that he was

denied appropriate medical treatment. A prisoner's disagreement with medical personnel over the course of his treatment does not constitute a constitutional cause of action. *See Wright v. Collins*, 766 F. 2d 841, 849 (4th Cir. 1985). Consequently, there remain no genuine issues for trial and the court will grant summary judgment in favor of the medical defendants.

V.  Conclusion

For the reasons set forth, the court will grant defendants' motions for summary judgment. An order follows.


Date: May 3, 2007               \_/s/_____
                                Andre M. Davis
                                United States District Judge